

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Affirmed by M V-424

Honorable John D. Reed, Commissioner
Bureau of Labor Statistics
Austin, Texas

Dear Sir:

Opinion No. O-4859
Re: Whether or not, under the
facts submitted, Rookie
Policemen and Jail Matrons
employed by the Police De-
partment of the City of
Fort Worth are included
within the provisions of
Article 1583, Section 7,
Revised Penal Code of 1925.

You have requested the opinion of this department
upon the above stated question, and have submitted with your
request a statement of facts, from which we take the follow-
ing excerpts:

"Ordinarily, or in Peace time, approximate-
ly fifteen men would be classed as Rookies, but,
at the present time, account so many entering the
service, some fifty five men are listed as Rookies.
On June 1st., the age limit was raised from 36 to
50 years, and Civil Service was discontinued, and
method now used in hiring a man, is to contact the
Chief of Police, and if vacancies exist, he talks
to them, and as Mr. Curry expresses it, if they ap-
pear to have good common sense, and are good clean
fellows, he gives them a job on a three months
basis. They are known as temporary officers, and
if prove up OK, their commission is renewed for
another three months, and so on up to two years.
The Rookie is not given a Commission card by the
City of Fort Worth, but, by Chief of Police, and
is subject, without appeal, to dismissal by the
Chief of Police.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"The starting salary of a Rookie, previous to June 1st., was $100 per month, but it is now $125 per month, and increases $10.00 every six months, until it reaches $150.00. The equipment necessary for a man to purchase when he starts work as a Rookie, figures about $100.00.

"The policeman that receives $150.00 per month, has had at least two years police experience, and has attended a school of at least 60 hours on police proceedure, and has passed radio operators test and holds 3rd., class operators license, also has had 20 hours in traffic and accident prevention, and also passed first aid tests. Schools are held about once a year and Rookies are forced to attend.

"Rookies attend Roll call same as other Policemen, and their salaries are paid out of same fund. They have Commissioners. They wear regular police uniforms. They wear police badge and carry fire arms. They are empowered to make arrests. Some walk beats, and some ride in cars, also work traffic. Mr. Curry says that only recently have they assigned the Rookie for any traffic duty, but, that in these fast changing times, you got to keep men who have radio license, on the cars.

"MATRONS-

"Two matrons are employed, they work 8 hour shifts, none on after 11 P.M., although they are subject to call. They wear no uniform nor have they a badge, but, are recognized as members of the Police Department, and are paid from the same fund as the police department. They do not make arrests, and are not sent out on investigations. They are empowered to search and if necessary disrobe female prisoners. They carry a key to the jail and if told by Jailer, can go to cell and let prisoner out. The same applies about putting female prisoners in the jail. They take their orders from the

Captain, Sergeant, or, whoever is in authority
on that shift. They used to keep the file on
prostitutes, but, that is not now part of their
duty.

"A Matrons salary is $110.00 per month, it,
having been reduced about three years ago from
$150.00 per month. . . . According to Mr. Curry,
you must believe that Matrons here do only prac-
tically Nurses work, looking after the needs of
women, . . . and bringing women to and from the
confined quarters, at the direction of the jailer."

Article 1583 of the Penal Code regulates the hours
of labor, vacations, and minimum pay of members of the Fire
Departments and Police Departments in certain of the larger
cities of Texas. Section 7 of said Article, referred to by
you, provides as follows:

"It is further provided that in any city
of more than seventy-five thousand (75,000) in-
habitants that each member of any such depart-
ment shall receive a sum of One Hundred Fifty-
($150.00) Dollars per month as a minimum wage
for said services so rendered.

"The city official having charge of the fire
department or police department in any such city
who violates any provision of this Article shall
be fined not less than Ten ($10.00) Dollars nor
more than One Hundred ($100.00) Dollars, and each
day on which said city official shall cause or
permit any section of this Act to be violated shall
constitute and be a separate offense. As amended
Acts 1935, 44th Leg., p. 377, ch. 139, § 1; Acts
1937, 45th Leg., p. 358, ch. 173, § 1."

Fort Worth is a city of more than 75,000 population,
and therefore the above quoted statutory provision undoubted-
ly applies to the Fire and Police Departments of that city.

There remains the question of whether, under the facts
above stated, the Rookie Policemen and Jail Matrons employed

Honorable John D. Reed, page 4

by the Police Department of the City of Fort Worth are includ-
ed within the provisions of said Section 7. This, of course,
depends on whether they are to be classified as "members of
the Police Department." The Legislature has not attempted to
define the meaning of that phrase. Nor have we found any deci-
sion of a Texas court defining the phrase. But Words and
Phrases, under the heading "Member of Police Department",
quotes the following decisions from New York, New Jersey, Iowa
and Massachusetts:

> "Laborer in city police department, who was
> assigned to work of washing cars at police garage,
> held 'member of police department' and subject to
> removal only in manner provided by charter. How-
> ard v. Higgins, 281 N. Y. S. 124, 245 App. Div.
> 154.

> "A lieutenant of police ceased to be a mem-
> ber of the police force when he accepted appoint-
> ment as police commissioner, in view of Greater
> New York Charter, §§ 291, 1549, and his office as
> lieutenant became vacant. Schieffelin v. Enright,
> 192 N. Y. S. 729, 732, 200 App. Div. 312.

> "Under ordinance providing that city police
> department should consist of certain number of
> officers and regular patrolmen, and such number of
> chancemen as board of commissioners deemed advis-
> able to appoint, chanceman appointed by commis-
> sioners was 'member of police department,' even
> though he held over after expiration of his ap-
> pointment, in view of P. L. 1917, p. 359, art.
> 16, § 3, N. J. S. A. 40:47-3, 5, 6. Hulse v. Po-
> licemen's Pension Commission of City of Long Branch,
> N. J., 136 A. 197, 198.

> "Decedent while acting as secretary of po-
> lice department, was appointed secretary of health
> department of public safety in accordance with
> Code 1927, § 2232, and § 2181, subd. 7, owned po-
> liceman's uniform and shield or star with words
> 'Captain Police Department' across face, and had
> charge of all inspectors and employees in sanitary
> division or health department and all matters per-
> taining to sanitation and health of community.

Secretary of city health department held 'member of police department,' within statute requiring payment of monthly pension to members' widows. Dempsey v. Alber, 236 N. W. 86, 88, 212 Iowa, 1134.

"Under St. 1909, ch. 188, authorizing the mayor and aldermen or board of police of cities, at his own request or at the request of the chief or superintendent of police, to retire from active service and place upon a pension roll any member of the police department permanently disabled or who has performed faithful service for not less than 20 years, a superintendent of police could be so retired on a pension; he being a 'member of the police department,' and the power conferred upon him to request the retirement of any other member not excluding him from the general provision that any member may make such request. Moffatt v. O'Donnell, 102 N. E. 344, 345, 215 Mass. 92."

Under the authority of these decisions, it is clear that such Matrons and Rookie Policemen are included within the meaning of the phrase "members of the police department." Furthermore, we believe that, in common understanding, such Rookie Policemen and Matrons are regarded as members of the Police Department of the City of Fort Worth. Nor would the failure to appoint them in accordance with the provisions of the city charter affect their status as members of the police department, since they are actual employees of such department. This very question was decided by the Ft. Worth Court of Civil Appeals in the recent case of City of Ft. Worth v. Morrison, et al., 164 S. W. (2d) 771. In that case the widow of a Ft. Worth fireman sued for additional salary alleged to have been due her husband under the terms of said Article 1583. The city defended in the ground that no Fire Department and no such office as Fireman was ever created by ordinance or resolution duly passed in accordance with the provisions of the charter of said city. On this point the Court said:

"We see no distinction between the rights of a Fireman who is a de jure officer and one who is a de facto officer, under the provisions of such Act.

"We do not believe that the City of Fort Worth, by simply failing or neglecting to pass an ordinance or resolution, in the manner provided for by the City's charter, can defeat the right of any Fireman, who was actually hired by and who became a part of the Fire Department of such City, regardless of the manner in which such Department was created by the City.

"We do not believe that the opinion, in City of Dallas v. McDonald, 130 Tex. 299, 103 S. W. 2d 725, is controlling in the case before us. The two cases are easily distinguished by a mere reading of the facts.

"The provisions of the City's charter make it mandatory that the City '* * * maintain a fire force consisting of the Fire Chief and such other officers, firemen and employees as may be provided by ordinance or resolution of the Council.'

"This charter is the organic law of said City and its relation to the City is not unlike the relation of the Constitution of the State of Texas to the State. There can be no doubt but that said City in some manner created a Fire Department and provided for the officers and firemen and other employees therein.

"They were all de facto officers, in our opinion, and were actual employees."

It is therefore our opinion that, under the facts submitted, the Rookie Policemen and the Jail Matrons of the City of Fort Worth are included within the provisions of Section 7 of Article 1583, supra.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

W. R. Allen
Assistant

WRA:db

APPROVED DEC 1, 1942

ATTORNEY GENERAL OF TEXAS